UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 23-CR-0367(3) (JMB/JFD) |
| Plaintiff, | |
| v. | ORDER<br>&<br>REPORT AND RECOMMENDATION |
| Quijuan Hosea Bankhead, | |
| Defendant. | |

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for an order on Defendant Quijuan Hosea Bankhead's non-dispositive pretrial motion (Dkt. No. 167), as well as for a report and recommendation on his dispositive motion (Dkt. No. 168) in connection with the charge against him and other co-defendants for conspiracy to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

The Court held a motion hearing on April 29, 2024. (Dkt. No. 206.) Assistant United States Attorney Campbell Warner represented the United States. Glenn Bruder, Esq. represented Mr. Bankhead. Ramsey County Sheriff's Deputy Cody Amberg testified for the prosecution.

**I.   Background**

The investigation of Mr. Bankhead began in August 2022, as detailed in a search warrant application by Deputy Amberg. (Gov't's Ex. 1.) Around that time, a confidential informant informed Deputy Amberg that Mr. Bankhead was trafficking narcotics in the

Twin Cities area. (*Id.* at 2.) The informant reported that they had "middled" fentanyl pills, known as "M30," for Mr. Bankhead, from his apartment at 27 Acker Street West, Unit 2, Saint Paul, to various locations or individuals throughout the Twin Cities. (*Id.*)

On February 2, 2023, Deputy Amberg, accompanied by the confidential informant, conducted surveillance near Mr. Bankhead's St. Paul residence. (*Id.* at 4.) During this visit, they observed a black BMW park at the southwest corner of Acker Street and Sylvan Street. (*Id.*) The informant recognized the vehicle and noted that its driver frequently picked up drugs from Mr. Bankhead. (*Id.*) They saw the driver walk to 27 Acker Street West, Unit 2, and then leave just a few minutes after. (*Id.*) Later that same day, Deputy Amberg observed another individual walk to 27 Acker Street West, Unit 2, and leave shortly after. (*Id.*)

On February 22, 2023, Deputy Amberg observed another automobile approach 27 Acker Street West, Unit 2, and saw Mr. Bankhead get into the front passenger seat for approximately two minutes before returning to his apartment. (*Id.*) Shortly after that, he observed a different automobile approach the home and stay for four minutes. (*Id.*) Deputy Amberg recognized the behavior as consistent with drug trafficking. (*Id.*)

Throughout January and February 2023, Deputy Amberg gathered additional information, which was used by law enforcement to obtain a search warrant for Mr. Bankhead's home. (*See id.*) The warrant was issued on February 22, 2023, and executed five days later, on February 27, 2023. (*See id.* at 8–11.)

Deputy Amberg testified at the April 29, 2024 hearing that between the time he received the search warrant and the time he searched Mr. Bankhead's apartment, he

participated in a search of several parcels sent through the Postal Service. Those parcels contained stuffed animals, which in turn contained large quantities of fentanyl pills.

During the search of Mr. Bankhead's apartment on February 27, 2023, Deputy Amberg found stuffed animals in the closet of the master bedroom. These stuffed animals appeared similar to those found in the searched parcels. Deputy Amberg testified that Mr. Bankhead and his children, who were infants or toddlers, were present when the police arrived. Law enforcement seized several firearms, ammunition, cash, a cell phone, a laptop, and the stuffed animals. (*Id.* at 11.) No controlled substances or typical narcotics sales items, such as packaging materials, scales, or drug ledgers, were discovered. (*See id.*)

Mr. Bankhead and others were indicted for drug trafficking. (*See* Dkt. No. 1.) The indictment broadly alleged that Mr. Bankhead participated in a conspiracy with others between August 2022 and December 2023, but did not accuse him of particdipating in any specific transaction. (*See id.* at 1–2.)

Mr. Bankhead has moved for the disclosure of the confidential informant and to suppress the evidence relating to the stuffed animals seized at his apartment during the February 27, 2023 search. (Dkt. Nos. 167, 168.) The undersigned addresses these motions in turn.

## II. Analysis

### A. Mr. Bankhead's Non-Dispositive Motion for Disclosure of Confidential Informant Information

Mr. Bankhead is seeking an order requiring the United States to disclose the confidential informant, make the informant available for an interview, and disclose any promises of favorable treatment to them. (Dkt. Nos. 167.)

The government has a limited privilege to withhold the identity of its confidential informants. *McCray v. Illinois*, 386 U.S. 300, 311 (1967). The defendant bears the burden of demonstrating the need for disclosure. *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991). "[I]n order to override the government's privilege of nondisclosure, defendants must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." *Id.* Put differently, "[t]here must be some showing that the disclosure is vital to a fair trial." *United States v. Curtis*, 965 F.2d 610, 614 (8th Cir. 1992).

When deciding whether the confidential informant's identity must be disclosed, courts must balance the defendant's needs against the public's strong interest in preserving the confidences of individuals who report crimes. *Roviaro*, 353 U.S. at 59–62. Courts consider factors such as the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001) (citing *Roviaro*, 353 U.S. at 60–61; *see also United States v. Lapsley*, 263 F.3d 839, 841 (8th Cir. 2001) ("Where the disclosure of an informer's identity, or of

4

the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.").

"Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995); *accord United States v. Foster*, 815 F.2d 1200, 1203 (8th Cir. 1987) ("The disclosure of an informant who was an active participant in the crime the accused is charged with is generally required."). By contrast, in cases involving "a 'tipster,' that is, a person who merely convey information to the government but neither witness[es] nor participate[s] in the offense," disclosure is not vital to a fair trial and so is usually not required. *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987).

Here, Mr. Bankhead contends that the informant "was not only an active participant in the conspiracy alleged," but "also a witness to at least a portion of the evidence." Disclosure of the informant will thus "be material to the accused's defense," he argues. The government, in turn, resists the requested disclosure and points the Court to two controlling decisions by the United States Court of Appeals for the Eighth Circuit in *United States v. Harrington*, 951 F.2d 876 (8th Cir. 1991), and *United States v. Hollis*, 245 F.3d 671 (8th Cir. 2001). In *Harrington*, the defendants were indicted for knowing and intentional possession with intent to distribute cocaine. 951 F.2d at 877. Law enforcement used a confidential informant to make controlled buys of crack cocaine from the defendants and secured a search warrant based on the information the informant supplied. *Id.* Cocaine was seized from the search and introduced as evidence against the defendants. *Id.* The government later dropped the conspiracy charge against the defendants. *Id.* The district

5

court then dismissed the indictment based upon the government's refusal to disclose the informant's identity. *Id.* The government appealed. *Id.*

The *Harrington* defendants contended that knowing the informant's identity was crucial for their defense, particularly to challenge the validity of the search warrant. *Id.* at 878. The Eighth Circuit disagreed, holding that the trial court abused its discretion in ordering the disclosure of the informant's identity. *Id.* The court emphasized that the informant did not participate in the actual criminal activity charged (*i.e.*, drug possession) and that the defendants failed to demonstrate that the informant's testimony would have been material to their defense. *Id.* The court concluded that the government's interest in protecting the informant's anonymity outweighed the defendants' need for disclosure. *Id.*

Similarly, in *Hollis*, the defendant pleaded guilty to two counts of possession with intent to distribute methamphetamine. 245 F.3d at 672. He appealed the district court's denial of his requests for government disclosure of the identity of the confidential informant whose statements were used to help obtain the search warrant and disclosure of any offers of leniency made to the informant by law enforcement. *Id.* The Eighth Circuit affirmed the district court's denial of these defense requests, noting that "[t]he confidential informant in this case did not participate in the offense charged." *Id.* at 674; *see also id.* at 673 (the informant told law enforcement that "a large quantity of methamphetamine" was being kept at the defendant's residence and that the informant had seen methamphetamine there in the previous ten days).

Here, Mr. Bankhead is charged with a single count of conspiracy to distribute fentanyl between August 2022 and December 2023. (Dkt. No. 1.) The informant had

6

nothing to do with this conspiracy, as the drug-middling the informant admitted to have facilitated for Mr. Bankhead ended before they began talking to Deputy Amberg. The informant was, thus, a "tipster," as opposed to a material witness in any sense. As in *Harrington* and *Hillis*, the confidential informant in this case did not participate in the offense charged and Mr. Bankhead has not demonstrated why the informant's testimony would be material to his defense. *See Hillis*, 245 F.3d at 673 (disclosure denied where the informant did not participate in the charged offense of possession with intent to distribute, but only told law enforcement that "a large quantity of methamphetamine" was being kept at the defendant's residence and that the informant had seen methamphetamine there in the previous ten days); *Harrington*, *951 F.2d* at 878 (disclosure denied where the informant "neither witnessed nor participated in the search" leading to possession charges and "could not offer any evidence bearing on the possession charges").

In short, given controlling precedent from the Eitghth Circuit on this issue, the Court concludes that Mr. Bankhead has not shown beyond mere speculation that the informant's testimony will be material to the determination of the case. Accordingly, the Court denies Mr. Bankhead's request for disclosure of the confidential informant (Dkt. No. 167).

### B.    Mr. Bankhead's Dispositive Motion to Suppress Evidence

Mr. Bankhead moves to suppress evidence obtained from the February 27, 2023 search of his apartment based on (1) invalidity of the search warrant and (2) seizure of materials outside the scope of the warrant itself.

The Fourth Amendment to the United States Constitution "safeguards 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures' and mandates that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Hessman,* 369 F.3d 1016, 1020 (8th Cir. 2004). "If evidence was gathered in violation of the Fourth Amendment, it may be suppressed under the exclusionary rule." *United States v. Eggerson*, 999 F.3d 1121, 1124 (8th Cir. 2021).

### 1. The Validity of the February 22, 2023 Search Warrant

"Issuance of a search warrant must be supported by probable cause, which depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016); *see* Fed. R. Crim. P. 41. Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). After a judicial officer has issued a warrant upon a finding of probable cause, that finding normally deserves great deference. *Id.* at 236.

When the issuing judge relies on the supporting affidavit to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005). "The affidavit should be examined under a common sense approach and not in a hypertechnical fashion." *Solomon*, 432 F.3d at 827; *accord United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) ("Affidavits must be read in a common-sense and realistic fashion."). Therefore, "[w]hen reviewing the issuance of a warrant, [this

Court] afford[s] great deference to the issuing judge's probable-cause determination, ensuring only that the judge 'had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing.'" *United States v. Petruk*, 929 F.3d 952, 959 (8th Cir. 2019).

A warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. *United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir. 1995) (cleaned up). Accordingly, probable cause may be found in hearsay statements from confidential informants corroborated by independent investigation, *Draper v. United States*, 358 U.S. 307, 313 (1959), or in observations made by trained law enforcement officers, *McDonald v. United States*, 335 U.S. 451, 454 (1948).

Mr. Bankhead's primary argument in challenging the validity of the search warrant at issue is that "the warrant application is framed and tailored to convey a misleading impression of what was, in reality, *isolated, innocent behavior*." (Dkt. No. 212 at 6 (emphasis added).) But courts do not look at the circumstances in isolation to determine whether probable cause exists. Rather, they consider "all of the facts for their cumulative meaning." *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002); *accord United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) ("A combination of otherwise innocent factors may create probable cause."); *see also Allen v. Monico*, 27 F.4th 1372, 1377 (8th Cir. 2022) ("probable cause does not require officers to rule out a suspect's innocent

9

explanation for suspicious facts" (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018)).

Here, as Mr. Bankhead acknowledges, the warrant application sets out specific facts, including facts Deputy Amberg learned from the confidential informant, which he himself was able to corroborate through his own investigation. *See also United States v. Keys*, 721 F.3d 512, 518 (8th Cir. 2013) ("receipt of consistent information" is a form of corroboration even when the informant had no "prior history of providing information to law enforcement"; and "even the corroboration of minor, innocent details can suffice to establish probable cause"). For example, Deputy Amberg affirmed under penalty of perjury that he was approached by a confidential informant who claimed to have "middled" fentanyl deals by obtaining fentanyl from Mr. Bankhead and then reselling it. (Gov. Ex. 1 at page 2.) The informant provided basic information about Mr. Bankhead, including his address and the type of automobile he drove, and identified a photograph of Mr. Bankhead. Deputy Amberg then used public data to confirm Mr. Bankhead's address and automobile. In early 2023, Deputy Amberg conducted repeated surveillance of Mr. Bankhead's home himself.

On one occasion, Deputy Amberg observed an automobile, suspected of being involved in drug trafficking, approach the home and stay for less than 20 minutes. He later confirmed that a co-defendant was present at the residence during that time. On another occasion, Deputy Amberg observed a different automobile approach the home, with Mr. Bankhead getting into the front passenger seat for approximately two minutes before returning to his apartment. Shortly after that, he observed yet another automobile approach

10

the home and stay for only four minutes. Deputy Amberg described the brief nature of these visits as behavior consistent with drug trafficking. *See United States v. Lewis*, No. 20-CR-0210, 2021 WL 2517217, at *5 (E.D. Mo. Apr. 30, 2021) ("short visits by individuals in cars registered to of out-of-area residents" are "consistent with drug trafficking activity").

Considering the totality of the circumstances as presented within the four corners of warrant application, there was probable cause to believe that Mr. Bankhead was involved in drug dealing and evidence of this crime would be found at his apartment. *See, e.g.*, *Faulkner*, 826 F.3d at 1144–46. The affidavit is thus facially valid. The Court need not consider the alternative argument of the United States that the good-faith exception, as articulated in *United States v. Leon*, 468 U.S. 897 (1984), would otherwise apply here.

        2.        <u>Seizure of Stuffed Animals During the February 27, 2023 Search</u>

During the search of Mr. Bankhead's apartment on February 27, 2023, law enforcement seized several firearms, ammunition, cash, a cell phone, a laptop, and stuffed animals from inside the closet in the master bedroom. Mr. Bankhead challenges the seizure of the stuffed animals as outside the scope of the search warrant.

A search warrant must describe the items to be seized with sufficient particularity "to enable the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Saunders*, 957 F.2d 1488, 1491 (8th Cir. 1992). A search or seizure pursuant to a warrant may not exceed the warrant's scope. *See United States v. Stephen*, 984 F.3d 625, 631 (8th Cir. 2021). To determine whether a search "exceeded the scope of

a warrant, [the Court] look[s] to the fair meaning of the warrant's terms." *Id.* (quoting *United States v. Sturgis*, 652 F.3d 842, 844 (8th Cir. 2011)).

Even where seized property falls outside the scope of the search warrant,[1] its seizure does not run afoul of the Fourth Amendment if the property was in plain view and its incriminating character was immediately apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (law enforcement may seize an object without a warrant if they are lawfully in a position to view the object, "its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object."); *United States v. Arredondo,* 996 F. 3d 903, 907 (8th Cir. 2021) (same). The "immediately apparent" prong of the plain-view doctrine requires that law enforcement have probable cause to believe that the object "may be contraband or stolen property or useful as evidence of a crime." *Texas v. Brown*, 460 U.S. 730, 741–42 (1983); *Arredondo,*996 F. 3d at 907 ("[f]or an item's 'incriminating character' to be 'immediately apparent,' the officer must have probable cause to associate it with criminal activity"); *United States v. Weinbender*, 109 F.3d 1327, 1330 (8th Cir. 1997) ("The 'immediately apparent' requirement means that officers must have probable cause to associate the property with criminal activity."). The plain-view doctrine reflects the fact that, once a lawful search is underway, "it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require [the

---

[1]  The United States insists that the stuffed animals fall within the scope of the warrant's reference to "items used or possessed for the purposes of distributing and/or consuming controlled substances," but offers no analysis of the fair meaning of these terms. (Dkt. No. 234 at 7.) Because the parties focus primarily on the application of the plain-view doctrine and the Court agrees that it applies, there is no need to consider the unsupported argument as to the warrant's scope.

police] to ignore [a piece of evidence] until they have obtained a warrant particularly describing it." *Coolidge v. New Hampshire*, 403 U.S. 443, 467–68 (1971).

Mr. Bankhead "concedes that officers were lawfully present in [his] master bedroom during the course of the search and that the stuffed animals were in plain view," but questions their "incriminating character." (Dkt. No. 212 at 8.) He fails to acknowledge, however, that, before the warrant was executed, Deputy Amberg had learned that Mr. Bankhead and his co-defendants were using stuffed animals to bring fentanyl pills into Minnesota. Therefore, at the time of the search, Deputy Amberg could reasonably conclude, as he did, that a pile of stuffed animals, plainly damaged, was evidence of criminal activity involving fentanyl trafficking. *See, e.g.*, *United States v. Doss*, No. 05-CR-0861, 2006 WL 1409132, at *3 (D. Utah May 18, 2006) (officer was justified in examining a stuffed animal for drugs where he had "previously discovered controlled substances concealed in stuffed animals"); *United States v. Sanders*, 631 F.2d 1309, 1314 n.7 (8th Cir. 1980) (the incriminating nature of a packet was immediately apparent where law enforcement agents knew that drugs were "frequently carried in small packets of th[e same] nature"). Put differently, a reasonable law enforcement officer in Deputy Amberg's position would have probable cause to associate the stuffed animals with criminal activity. *See Weinbender*, 109 F.3d at 1330.

Thus, the officers properly seized the stuffed animals, and the undersigned recommends denying Mr. Bankhead's motion to suppress this evidence.

## III. Order

Based on the foregoing and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Defendant's Motion for Disclosure of Informant (Dkt. No. 167) is **DENIED**.

## IV. Recommendation

Based on the foregoing and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Defendant's Motion for Suppress Evidence (Dkt. No. 168) be **DENIED**.

Date: July 25, 2024              *s/ John F. Docherty*   .
                                 JOHN F. DOCHERTY
                                 United States Magistrate Judge

## NOTICE

**Filing Objections**: The Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to District of Minnesota Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within 14 days. A party may respond to objections within 14 days of being served a copy. All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).